**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jana Lynn Doyle, | No. CV-21-00296-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff challenges the denial of her application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 12), the Commissioner's answering brief (Doc. 16), and Plaintiff's reply (Doc. 17), as well as the Administrative Record (Doc. 11, AR), and now affirms.

**I.     PROCEDURAL HISTORY**

On February 20, 2018, Plaintiff filed an application for disability and disability insurance benefits, alleging disability beginning on June 21, 2017. (AR at 23.) The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration levels of administrative review and Plaintiff requested a hearing before an ALJ. (*Id*.) On July 9, 2020, following a hearing, the ALJ issued an unfavorable decision. (*Id*. at 23-38.) The Appeals Council later denied review.

…

…

## II. THE SEQUENTIAL EVALUATION PROCESS AND JUDICIAL REVIEW

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

### III.     THE ALJ'S DECISION

The ALJ found that Plaintiff had not engaged in substantial, gainful work activity since the alleged onset date and that Plaintiff had the following severe impairments: "chronic obstructive pulmonary disease (COPD), status post shoulder surgery in 2017, fibromyalgia, obesity, multilevel degenerative disc disease, carpal tunnel syndrome, and trochanteric bursitis." (AR at 26-27.) Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing. (*Id.* at 27-31.) Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can occasionally operate foot controls with the right lower extremity, never climb ladders, ropes, or scaffolds, occasionally climb ramps or stairs, and occasionally balance, stoop, crouch, crawl, or kneel. In addition, the claimant can occasionally reach overhead bilaterally, and frequently handle and finger bilaterally. She can have occasional exposure to pulmonary irritants, such as fumes, odors, dust, or gases, and occasional exposure to poorly ventilated areas, dangerous machinery, or unprotected heights.

(*Id.* at 31.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding (as discussed more below) that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 31-34.) The ALJ also evaluated opinion evidence from the following three medical sources: (1) Mikhail Bargan, MD, agency consultant ("most persuasive"); (2) M. Gleason, MD, agency consultant ("most persuasive"); (3) Keith Cunningham, MD, independent medical examiner ("limited persuasiveness"). (*Id.* at 34-35.)

Based on the testimony of a vocational expert, the ALJ concluded that Plaintiff (1) was capable of performing her past relevant work as a general merchandise salesperson or counter attendant; and (2) was also capable of performing other jobs that exist in significant numbers in the national economy, including cashier II, cafeteria attendant, toll collector, marker garment sorter, mail sorter, and dispatcher-router. (*Id.* at 35-38.) Thus, the ALJ

concluded that Plaintiff is not disabled. (*Id.* at 38.)

## IV. DISCUSSION

Plaintiff presents two issues on appeal: (1) whether the ALJ erred when discrediting her symptom testimony (Doc. 12 at 12-18); and (2) whether the ALJ erred when discrediting the opinions of Dr. Cunningham (*id.* at 18-23). As a remedy, Plaintiff seeks a remand for calculation of benefits pursuant to the credit-as-true rule. (*Id.* at 23-24.)

### A. Symptom Testimony

#### 1. **Standard Of Review**

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (citations omitted). If so, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Instead, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" only by "providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015).

#### 2. **Plaintiff's Testimony**

During the hearing, Plaintiff testified that she was unable to continue working due to "severe back pain . . . . I would come home from work and have to lay in bed for, basically, the rest of the evening due to pain and spasms, I get muscle spasms real bad. And my legs feel very weak and wobbly, I have to use a cane certain times, I mean, that's becoming more frequent. . . . [A]nd my shoulder . . . tingles . . . . [A]nd I have herniated disc, and when you bend, like, up, it moves and it causes severe pain when I'm bending up. And my knees are weak. But it's just a lot of obstacles in the work and it's debilitating." (AR at 56.) When asked to describe more specifically the location of the pain, Plaintiff answered: "I deal with neck pain, shoulder pain, back pain, hip pain, knee pain, ankle pain, and . . . overall legs pain." (*Id.* at 57.) Plaintiff continued: "[W]hen I get up in the morning

I can barely . . . walk.  It's . . . a struggle.  And I do have to lay down several times in the day to alleviate the nerve pain that I have." (*Id.* at 57-58.)

As for the use of a cane, Plaintiff testified that although a cane wasn't prescribed by her doctor, she uses a cane "as an everyday thing," not for the entire day but starting in "the midday" and continuing "for the rest of the day." (*Id.* at 58.)

As for her activities of daily living, Plaintiff testified that her usual day consists of waking up, taking a pain pill, stretching, picking up around her kitchen and living room (including "dust[ing] with a feather duster"), getting the laundry started with help from her husband, and folding the laundry without help. (*Id.* at 60-61.)  Plaintiff also testified that she does not drive due to side effects from her medication, which makes her "foggy." (*Id.* at 61-63.)  Plaintiff further testified that she can walk "maybe 100 to 200 feet" before needing to sit down and has "trouble going around the block" (*id.* at 66-67); can stand for "30 minute[s] to an hour" before needing to sit (*id.* at 67); can only sit for "probably, two hours" (*id.* at 67); and must lay down 2-3 times per day for 1-2 hours each (*id.* at 67-68).  Finally, as for her ability to use her hands, Plaintiff testified that "small things are . . . a big obstacle" because she "drop[s] those constantly" and that she cannot write more than a paragraph before experiencing hand pain. (*Id.* at 63-64.)

Plaintiff also completed a "Function Report—Adult" as part of her application. (*Id.* at 282-90.)  There, in response to a question asking whether she takes care of anyone else, Plaintiff wrote: "I have my daughter at home to get ready for school.  I do most of the household chores such as cleaning, cooking, laundry and shopping." (*Id.* at 283.)  Plaintiff also stated that she has pets that she feeds, bathes, and takes for walks when she "feel[s] good enough." (*Id.*)  As for her ability to care for her hair, Plaintiff wrote: "I cannot bend shoulders up to curl and move my arms to do hair so put in ponytail." (*Id.* at 284.)  As for her ability to shop, Plaintiff wrote that she goes shopping "once every week [for] at least . . . 4 hours" and buys household items, cleaning supplies, food, and hygiene items. (*Id.* at 285.)  Finally, in response to a question about assistive devices, Plaintiff did not check the box next to "Cane" but indicated that uses a knee brace, shoulder splint, and glasses. (*Id.*

at 288.)

### 3. **The ALJ's Evaluation Of Plaintiff's Testimony**

The ALJ concluded that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 32.)

The ALJ's accompanying explanation was quite detailed. First, the ALJ addressed Plaintiff's testimony related to her COPD symptoms, concluding that those symptoms were "not as limiting as alleged" because although Plaintiff "testified to experiencing substantial shortness of breath," "the results of pulmonary function testing were 'near normal'" and "the record shows the claimant's COPD improved after she stopped smoking." (*Id.*)

Next, the ALJ addressed Plaintiff's testimony related to her shoulder impairment, concluding that this condition was "also not as limiting as alleged" because Plaintiff was able, despite several surgeries, to "continue[] to provide care for her school-age child, and do most of the housework and cooking for her family." (*Id.*)

Next, the ALJ addressed Plaintiff's testimony related to her multilevel degenerative disc disease and identified what the Court discerns as five reasons why it should be discounted: (1) various medical tests and imaging studies revealed that Plaintiff's condition was only "mild" or "no[t] severe" or "moderate" or "negative"; (2) "two providers noted . . . when reviewing the MRI results . . . [that] claimant's pain with radicular symptoms cannot be explained, with one stating, 'I cannot explain the distribution of her pain and numbness based upon the MRI'"; (3) "the claimant's gait is normal," despite occasional notations of a limp; (4) "[t]reatment of the claimant's multilevel degenerative disc disease appears to be routine, with the claimant engaging in long-term use of opiates with sporadic increases in Oxycodone . . . [and] injections"; and (5) although Plaintiff "made allegations regarding the use of a cane or assistive device," "[t]he record shows the cane is rarely used,

. . . there is no prescription noted . . . [and] she did not use it at the independent medical examination or at other appointments during that that time." (*Id.* at 32-33.)

Next, the ALJ addressed Plaintiff's testimony related to her fibromyalgia, concluding that even though "the condition is being found severe to give the claimant the benefit of the doubt . . . [t]he evidence as a whole fails to support her allegations that she has to recline 3-4 hours a day." (*Id.* at 33.)

Next, the ALJ addressed Plaintiff's obesity, acknowledging that this condition may exacerbate other conditions and making clear that "[t]hese considerations have been taken into account in reaching the conclusions herein." (*Id.* at 33-34.)

Next, the ALJ addressed Plaintiff's testimony related to her carpal tunnel syndrome, concluding that Plaintiff's testimony regarding "dropping items and an inability to write [were] not fully supported by objective testing or physical examinations in the record" in light of "physical examinations show[ing] the claimant has normal grip and normal strength (e.g., most notably, at exhibit 33F)." (*Id.* at 34.)

Finally, the ALJ addressed Plaintiff's testimony related to her trochanteric bursitis, concluding that Plaintiff's testimony "that she has weakness in her right lower extremity due to this condition" was "inconsistent with objective records showing the claimant had normal strength in the right lower extremity, with negative Trendelenberg signs." (*Id.*)

### 4. **Plaintiff's Arguments**

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for discrediting her symptom testimony. (Doc. 12 at 12-18.) As an initial matter, Plaintiff argues that the ALJ applied the wrong standard and merely summarized the medical records without explaining, with specificity, why they were inconsistent with her testimony. (*Id.* at 13-15.) As for the medical records concerning her spinal condition, Plaintiff argues that the ALJ improperly focused on the absence of severe stenosis and overlooked the records showing bone spurs and disc protrusions. (*Id.* at 15.) As for the medical providers' comments expressing puzzlement over her alleged symptoms, Plaintiff argues those comments are irrelevant because "the consulting surgeon still confirmed

diagnoses of lumbar spondylosis and radiculopathy" and "did not indicate that [Plaintiff's] symptoms were feigned." (*Id.*) As for the alleged inconsistency between her complaints of shoulder pain and her childcare responsibilities, Plaintiff contends there was no inconsistency because "the function report does not reveal anything about childcare activities, other than helping her daughter get ready for school," and otherwise is consistent with her claims of limitation. (*Id.* at 15-16.) As for the medical records showing normal gait, normal neurological findings, and normal strength, Plaintiff argues that "observations during various time-limited appointments are not at odds with an assessment of [her] ability to function in the more grueling environment of the workplace." (*Id.* at 16.) Plaintiff also notes that some of the medical records showed tenderness, poor muscle tone, and pain. (*Id.*) As for the supposed routine nature of her spinal treatment, Plaintiff contends that steroid and other injections and Oxycodone use cannot be considered routine or conservative. (*Id.* at 16-17.) Finally, as for her use of a cane, Plaintiff contends "there is no inconsistency" because she testified that she only "used her cane occasionally." (*Id.* at 17.)

5. **Analysis**

Although the Commissioner addresses most of Plaintiff's criticisms in the answering brief (Doc. 16 at 3-8), the Court finds three of the Commissioner's arguments dispositive and thus does not address the rest.

First, Plaintiff does not appear to address, let alone challenge, the ALJ's first proffered reason for discrediting her symptom testimony, which was that the medical records contradicted her claims of COPD-related symptoms. (AR at 32.) As the Commissioner notes in the answering brief (Doc. 16 at 4), this finding of inconsistency was supported by substantial evidence. Although Plaintiff testified that she could only walk 100 to 200 feet before losing her breath (AR at 66-67), Plaintiff's medical records revealed that her pulmonary function was "near-normal" and her COPD was "mild" (*id.* at 1066-67). This inconsistency, alone, was a clear and convincing reason for discrediting Plaintiff's symptom testimony. *Carmickle v. Comm'r, Social Sec. Admin.*, 533 F.3d 1155,

1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

Second, another of the ALJ's proffered reasons for discrediting Plaintiff's symptom testimony was inconsistency with her activities of daily living. Such inconsistency is another permissible basis under Ninth Circuit law for discrediting a claimant's symptom testimony. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) ("[T]he ALJ may consider inconsistencies . . . between the testimony and the claimant's conduct . . . and whether the claimant engages in daily activities inconsistent with the alleged symptoms. While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (cleaned up).

The ALJ's finding of inconsistency on this topic was supported by substantial evidence. Although Plaintiff asserted that she has to lie down several times each day for 1-2 hours, can only walk 200 feet, and cannot move her shoulders to perform self-care activities like styling her hair (AR 66-67, 284), Plaintiff elsewhere acknowledged that she assists with at least some childcare activities, "do[es] most of the household chores such as cleaning, cooking, laundry and shopping," and is responsible for various pet care activities (*id.* at 60-61, 283-84). Although Plaintiff attempts to identify various ways in which these two sets of testimony could be reconciled, it was rational for the ALJ to conclude they were contradictory. And "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. Upholding an adverse-credibility finding in this circumstance does not result in "disability claimants [being] penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). To the contrary, the Ninth Circuit has recognized that a "tendency to

exaggerate" is a "specific and convincing reason" for discrediting a claimant's testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Third, yet another of the ALJ's proffered reasons for discrediting Plaintiff's symptom testimony was that Plaintiff made inconsistent statements concerning her use of a cane. This, too, is a permissible basis under Ninth Circuit law for discrediting a claimant's symptom testimony. *See, e.g., Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (concluding that "the ALJ did offer clear and convincing reasons for rejecting Verduzco's testimony" where "the ALJ noted that the appellant had walked slowly and used a cane at the hearing, although none of his doctors had ever indicated that he used or needed to use an assistive device in order to walk" and "two doctors had specifically noted that the appellant did not need such a device"); *Donathan v. Astrue*, 264 F. App'x 556, 558 (9th Cir. 2008) (concluding that "the ALJ provided clear and convincing reasons for rejecting Donathan's subjective allegations" where the ALJ "offered several reasons supporting the adverse credibility determination, including . . . inconsistencies regarding Donathan's need for use of a cane or scooter").

The ALJ's finding of inconsistency on this topic was supported by substantial evidence. Although Plaintiff testified that she uses a cane "as an everyday thing," not for the entire day but starting in "the midday" and continuing "for the rest of the day" (AR at 58), the ALJ correctly noted that Plaintiff "did not use it [a cane] at the independent medical examination or at other appointments" (*id.* at 33, citing 27F and 33F). Plaintiff attempts to dispute this finding of inconsistency by arguing that, because one of the appointments cited by the ALJ occurred in the morning, the absence of a cane during that visit was not necessarily inconsistent with her testimony that she only starts using a cane each day in the afternoon. (Doc. 17 at 6.) This argument lacks merit. The medical record from the visit in question contains the following notation: "The patient walks with a normal gait. She is able to bear weight equally on both lower extremities [and] does not use an ambulatory aid. Posture and stance are normal." (AR at 904.) The ALJ could have rationally construed this notation as a statement that Plaintiff never uses a cane, as opposed to an observation

that Plaintiff simply wasn't using a cane at the time of the appointment. At any rate, Plaintiff does not address the other appointment cited by the ALJ, which is the independent medical evaluation that took place on May 5, 2020. (AR at 1057-63.) There is no indication this appointment only took place in the morning.

Because, as discussed above, the ALJ identified at least three clear and convincing reasons supported by substantial evidence for discrediting Plaintiff's symptom testimony—and only one such reason would be required for affirmance—it is unnecessary to review the sufficiency of the ALJ's other proffered reasons. *Carmickle,* 533 F.3d at 1162-63.

B.  Dr. Cunningham

1.  **Standard Of Review**

In January 2017, the SSA amended the regulations concerning the evaluation of medical opinion evidence. *See Revisions to Rules Regarding Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because the new regulations apply to applications filed on or after March 27, 2017, they are applicable here.

The new regulations, which eliminate the previous hierarchy of medical opinions, provide in relevant part as follows:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency . . . .

20 C.F.R. § 416.920c(a).[1] Regarding the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Regarding the

---

[1] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c(c).

- 11 -

"consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2)

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (cleaned up). Although an "ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records . . . the ALJ no longer needs to make specific findings regarding these relationship factors . . . ." *Id.*

          2.    **Dr. Cunningham's Opinions**

On May 5, 2020, Dr. Cunningham conducted an independent medical evaluation of Plaintiff. (AR at 1057-63.) Dr. Cunningham reported the results of that evaluation in a pair of forms. The first was a five-page narrative account of the evaluation. (*Id.* at 1057-61.) There, Dr. Cunningham identified the medical records he had reviewed (*id.* at 1-57-58), summarized Plaintiff's medical and social history and the results of his physical examination of Plaintiff (*id.* at 1058-60), and then diagnosed Plaintiff with five conditions:

(1) chronic back pain with known history of cervical and lumbar degenerative disc disease/multilevel foraminal stenosis with pain on exam; (2) fibromyalgia; (3) type 2 diabetes without neuropathy; (4) chronic opioid pain management; and (5) history of chest crush injury status post rib plating with clear breath sounds on exam (*id.* at 1060-61). The second form was a check-box form entitled "Medical Assessment Of Ability To Do Work-Related Physical Activities." (*Id.* at 1062-63.) There, Dr. Cunningham opined, *inter alia*, that Plaintiff could only sit for 4 hours in an 8-hour workday; could only lift up to 30 pounds; could only stand/walk for 2-3 hours; could only carry up to 30 pounds; would need to alternate positions every 1+ hours (and would need to take a break of 5-9 minutes after each change in position); and could bend and stoop "less than occasionally" (less than 20%). (*Id.* at 1062.) Dr. Cunningham also opined that Plaintiff's medical impairments do not cause any "cognitive or pace limitations." (*Id.* at 1063.)

### 3. **The ALJ's Evaluation**

The ALJ concluded that Dr. Cunningham's opinions have "limited persuasiveness." (AR at 35.) More specifically, the ALJ explained:

> The undersigned finds the opinion of independent medical examiner Keith Cunningham, MD, to have limited persuasiveness. Dr. Cunningham opined the claimant can sit for 4 hours in an 8-hour workday, and stand and/or walk for more than 2 but less than 3 hours in an 8-hour workday, lift and/or carry more than 20 pounds but less than 30 pounds. In addition, he opined the claimant must change position throughout the day with more than an hour in between, and must rest for 5-9 minutes when doing so. He opined the claimant can frequently use her bilateral hands, and less than occasionally bend and stoop. (33F). The opinion is not well supported by Dr. Cunningham's in-person examination of the claimant, nor is it consistent with the greater record. Dr. Cunningham checked boxes on a form with minimal explanation. The limits opined are extreme and inconsistent with the record. In addition, the limits are internally inconsistent. For example, he opined, apparently based on a notation at 23F/6 that narcotics cause sedation, inattention, and confusion, yet he also checked the box to indicate the claimant has no cognition or pace limitations (33F). The limits opined are not supported by his own clinical findings. For example, the hand examination he performed was totally normal, yet he opined the claimant can frequently use her bilateral hands (33F). In addition, the limits opined are inconsistent with the claimant's activities of daily living, including doing

>housework and driving, which suggests some ability to concentrate and use the right lower extremity. Moreover, Dr. Cunningham is not a treating provider, but rather was paid by the claimant's representative. The document was generated not for treatment purposes, but was specifically intended to generate evidence. Finally, Dr. Cunningham indicated he reviewed 100 records, yet this record does not contain 100 medical records.

(*Id.*)

####  4. **The Parties' Arguments**

Plaintiff argues that the ALJ's rationale for discrediting Dr. Cunningham's opinions was deficient for the following reasons: (1) the ALJ simply asserted that the opinions were "not well supported" and "inconsistent" without explaining why (Doc. 12 at 19); (2) there was no inconsistency between Dr. Cunningham's examination of Plaintiff's hands and Dr. Cunningham's resulting opinions regarding hand use and lifting capacity (*id.* at 20); (3) there was no inconsistency between Dr. Cunningham's discussion of narcotic medication side effects and Dr. Cunningham's "no cognitive or pace limitations" opinion because "Dr. Cunningham ultimately opined that [Plaintiff's] medical impairments of back and hip pain caused limitations in [Plaintiff's] ability to sit, stand, and walk over the course of an eight-hour day" and "a notation of medication side effects does not relate to Dr. Cunningham's assessed exertional limitations" (*id.*); (4) the check-box nature of Dr. Cunningham's questionnaire is not a valid basis for discounting the opinions expressed therein, particularly where the questionnaire was accompanied by a detailed report (*id.* at 20-21); (5) the ALJ's characterization of Dr. Cunningham's opined-to limitations as "extreme" was inaccurate because Dr. Cunningham acknowledged that Plaintiff could still perform various work-related activities, albeit with limitations (*id.* at 21); (6) there was no inconsistency between Dr. Cunningham's opinions and Plaintiff's activities of daily living (*id.*); (7) the ALJ's decision to discount Dr. Cunningham's opinions on the basis that he was not a treating provider, but rather was paid by Plaintiff's representatives, was flawed and inconsistent because the ALJ credited the opinions of other non-treating sources hired by the state (*id.* at 22); and (8) "[a]s to Dr. Cunningham's notation that he reviewed '100 records,' the notation was likely a typographical error and likely referenced 100 pages of

records, as noted by Dr. Cunningham's detailed summary of imaging, treatment records, and procedures. This record clearly contains at least 100 pages of records, which were available to Dr. Cunningham in May 2020 to be reviewed in conjunction with his examination and report" (*id.*).

In response, the Commissioner defends the sufficiency of the ALJ's rationale for discrediting the opinions of Dr. Cunningham. (Doc. 16 at 8-12.) As an initial matter, the Commissioner faults Plaintiff for relying on outdated caselaw that construed the old SSA regulations concerning the evaluation of medical opinion evidence. (*Id.* at 8-10.) On the merits, the Commissioner argues that the ALJ properly considered the supportability and consistency factors and permissibly concluded that both factors undermined Dr. Cunningham's opinions. (*Id.* at 10-12.) As for supportability, the Commissioner contends that Dr. Cunningham's opinions were lacking because (1) he "merely checked boxes on a form without any convincing explanation for his opinion"; (2) "his examination findings were largely unremarkable"; and (3) "even though Dr. Cunningham noted that [Plaintiff's] medication caused cognitive side effects, he stated elsewhere on the form that she had no cognitive limitations." (*Id.* at 10-11.) As for consistency, the Commissioner contends that Dr. Cunningham's opinions were lacking because (1) "in contrast to Dr. Cunningham's opinion about [Plaintiff's] standing limitations, multiple exams showed that [Plaintiff] walked with a normal gait"; (2) "[m]edication and injections reduced [Plaintiff's] pain, and some of her providers noted the discrepancy between [her] complaints and her relatively modest MRI results"; and (3) "[Plaintiff] functioned well enough to handle multiple chores throughout her day." (*Id.* at 11.)

In reply, Plaintiff argues that the Commissioner's discussion of the new regulations is "simply an attempt to distract attention from [Plaintiff's] argument that the ALJ's treatment of the assessment from Dr. Cunningham fails under *any* standard" (Doc. 17 at 7); that the Commissioner "simply repeat[s] the ALJ's statements, the ALJ's relied-upon evidence, and common legal maxims" (*id.* at 8-9); and that the Commissioner does not even respond to some of her specific challenges to the ALJ's rationale (*id.* at 9-10).

5. **Analysis**

Under the new regulations, an ALJ is required to "articulate how persuasive [she] finds all of the medical opinions from each doctor or other source and explain how [she] considered the supportability and consistency factors in reaching these findings." *Woods*, 32 F.4th at 792 (cleaned up). Here, the ALJ expressly considered the supportability and consistency factors in the portion of the order addressing Dr. Cunningham's opinions. Thus, so long as the ALJ's evaluation of those factors is supported by substantial evidence, the Court must affirm.

Although Plaintiff makes a strong case that some of the ALJ's reasons for making negative supportability and consistency findings as to Dr. Cunningham were flawed—indeed, the Commissioner does not appear to defend some portions of the ALJ's rationale—the ALJ provided other reasons in support of these determinations that were supported by substantial evidence. As for supportability, it was rational for the ALJ to find an unexplained conflict between Dr. Cunningham's observation that Plaintiff's use of narcotics caused "sedation, inattention and confusion" (AR at 1062) and Dr. Cunningham's opinion that Plaintiff did *not* have any medical impairments that would cause "cognitive or pace limitations" (*id.* at 1063). As for consistency, it was rational for the ALJ to conclude that Dr. Cunningham's opined-to limitations (which included "less than occasional" bending and stooping) were inconsistent with Plaintiff's daily activities, which as noted in Part IV.A above included at least some childcare activities, most of the household chores such as cleaning, cooking, laundry and shopping, and various pet care activities.

…

…

…

…

…

…

…

Accordingly, **IT IS ORDERED** that:

1. The July 9, 2020 decision of the Administrative Law Judge is **affirmed**.
2. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 20th day of September, 2022.

_____
Dominic W. Lanza
United States District Judge